## M'INTYRE and BRADFORD *against* SCOTT.

THIS action was brought to recover the value of articles furnished by the plaintiffs, who were ship-chandlers, for the brig *Ceres*.

The brig arrived from a voyage, the 17th *November*, 1807. Being in want of ship-chandlery, the plaintiffs

A *mortgagee* of a ship, *out of possession*, is not liable for repairs or necessaries furnished the ship.

supplied the articles, from time to time, on the order of *Charles Dayton*, the master. The brig was owned by *Henry Wylie*, who resided in *New-York*, where she was registered; and when in port, previous to her last voyage, was supplied by the plaintiffs, on the order of the master, and they were paid by *Wylie.* When the articles in question were furnished, *Wylie* was in good credit; and the defendant having lent him a note for 2,000 dollars, dated 30th *November*, 1807, payable in 60 days, for his accommodation, took from him a bill of sale of the brig, which was, in its terms, an absolute bill of sale, being in the usual form, dated the 30th *November*, 1807; and on the 9th *January*, 1808, it was deposited at the custom-house, for the purpose of preventing a register being granted to any other person. The bill of sale was taken by the defendant, as *collateral security*, for the payment of the note when it should fall due; and a writing or *defeasance* was executed by the defendant and *Wylie* to that effect, at the time the bill of sale was executed, which was not, however, attached to the bill of sale, nor deposited at the custom-house with it. *Wylie* stopped payment before the note became due, and it was taken up by the defendant.

After the bill of sale was executed, *Dayton*, the master, continued in possession of the brig, acting under the orders of *Wylie;* and after the defendant had paid the note, he applied to *Wylie* for the repayment of the money, or that the brig should be delivered into his possession; but *Wylie* and *Dayton* both refused to give up the brig to the defendant, and she continued to remain in their possession and under their control, until the 3d *May*, 1808, when *Wylie* repaid the 2,000 dollars, with interest, to the defendant; and, by direction of *Wylie*, the defendant executed a bill of sale of the vessel to *Dayton*, in the usual form; and for the purpose of making such conveyance, the defendant took out a register, and took the oath prescribed by law, for that purpose.

The plaintiff furnished the articles, between the 20th *November*, 1807, and the 8th *January*, 1808, inclusive; and *Wylie* stopped payment on the 9th *January*, 1808. The plaintiff knew nothing of the bill of sale to the defendant, until after he had conveyed her to *Dayton*, who continued, during all the time as the master; and his wages, the wharfage, and other charges, were paid by *Wylie.* The articles furnished by the plaintiff were necessary for the repair of the vessel, and were charged to the brig *Ceres* and owners.

A verdict was taken, by consent, for the plaintiff, subject to the opinion of the court, on a case containing the above facts.

*S. Jones*, jun. for the defendant, was stopped by the court, who desired to hear the other side.

*Wells*, contra. The general question is, how far a mortgagee of a ship, not in possession, is liable for necessaries furnished for the ship ? The cases in *England* in which it has been decided that the mortgagee was not liable, are those where the credit was given to, and the contract made with, the mortgagor.

In *Jackson* v. *Vernon*,[*] the goods were supplied by order of *Palmer*, the owner, and therefore the credit was given to him. The court, too, in that case, relied on the cases of *Eaton* v. *Jacques*,[†] as analogous and in point, where it was held that the person to whom a term had been assigned, by way of mortgage, was not liable on the covenants to the lessor; but that case is much shaken, if not entirely overruled, by Lord *Kenyon*, in *Westerdell* v. *Dale*.[‡] His lordship says, " As to the cases respecting the mortgagee; whether in or out of possession, he is the legal owner, and must be so considered in a court of law, notwithstanding his title is subject to equitable interests ;" and he held, that if there was any difference between the mortgagee of real and personal property, the

*Margin right:*

M'INTYRE
v.
SCOTT.

[*] *1 Hen. Bl.* 114. See also, *Chinney* v. *Blackburne*, in note, p. 117.

[†] *Doug.* 454. and note (t) 461. *Walker* v. *Reeves.*

[‡] *Term Rep* 306.

NEW-YORK, distinction afforded a strong argument against the mort-
May, 1811.  gagee of a ship.

M'INTYRE        The present case is distinguishable from that of *Jack-*
v.          *son* v. *Vernon,* and is the precise case which *Abbott** says
SCOTT.      is still undecided in *England.* He observes that " the
*Abbott on Ship.  general question will most properly arise in the case of
3d edit. 20, 21.  a contract made by the master in that character ;" and this
            is precisely the case here. This court must, therefore,
            decide the general question. The subject was discussed
3 Cranch, 140. by the counsel in *Hodgson* v. *Butts,** in the supreme
/ Cranch       court of the *United States,* but the question was not de-
488         cided by the court.

            If the defendant was not in the actual possession, he
            had the power to take possession at any time. The
            master was his agent or trustee, and was bound to deli-
            ver him the possession. If he refused to give possession,
            the defendant had no occasion to resort to an action, but
            might turn the master out when he pleased. The de-
            fendant was the legal owner, and had the legal do-
            minion over the ship. The bill of sale was absolute ;
            and as the defeasance or condition was, afterwards, bro-
            ken, all the right of *Wylie,* if he had any, was completely
            gone.

            *Per Curiam.* The opinions of the judges in *Jackson*
            v. *Vernon,* went upon the ground, that a mortgagee of a
            ship, *out of possession,* was not liable for necessaries fur-
            nished the ship, for he does not take the freight. This
            is precisely such a case. All the supplies were furnish-
            ed before the note, for which the ship was mortgaged as
            security, became payable. No credit was given to the
            defendant. He was not known until after the goods were
            delivered. He never had the possession of the brig, nor
            could he obtain it ; and the debt has since been paid, and
            the pledge redeemed. It would greatly impair the value
            of such security, if a mortgagee, out of possession, were
            to be made liable for goods so furnished to the ship.
            There must be judgment for the defendant.