Jones, C. J.
This was an action by the plaintiffs in this suit against the defendant, for work, and labour, and materials found, &c., in repairing the ship Concordia, when she stood in the name of the defendant as ostensible owner, and the defence was, that the defendant was mortgagee out of possession, and therefore not answerable to the plaintiffs for the repairs done by them to her. The question of absolute or qualified ownership, and the fact of possession, were the chief points of litigation at the trial, and to which the testimony was exclusively pointed. The Judge charged the jury, that if they were satisfied that the defendant was the owner of the ship, or mortgagee in possession, at the time the work was done, the plaintiffs were entitled to recover; but if the jury, from the evidence, believed that the defendant was not owner, but was a mortgagee, and out of possession, then they ought to find for the defendant; and under this charge, the jury gave their verdict for the defendant.
The plaintiffs now move to set that verdict aside, and for a new trial, insisting that the admissible evidence showed the ownership of the Concordia to have been in the defendant, and that the evidence which went to disprove his title as owner, and to show his interest to have been that of a mortgagee, xvas inadmissible; and also insisting further, that if he was in fact clothed with a mortgage interest solely, he appeared by the evidence to have been in the possession of the vessel, and to have exercised acts of ownership and a control over her, or to have possessed the undisputed right to the possession and control of her, and was, on either ground, chargeable xviththe repairs; and moreover contending broadly, that even if the defendant was a mortgagee out of possession, he was still responsible as the legal owner; or if the general rule were otherxvise, that this case would form an exception, and the *12 defendant would be liable upon the special ground, that the repairs in question had'enured to his benefit, by enhancing the value of his security.
The first question then is, whether the defendant, was, in judgment of law, the absolute owner of the ship, or mortgagee, or trustee only, at the time the work was done.
The plaintiffs, to establish the ownership of the defendant, produced and proved the Custom-house register of the ship, with the affirmation of the defendant, that he was sole owner, by which document so produced, it appeared that a new register had been issued for her, on the 15th of October, 1824, her previous register, issued on the 27th of August next preceding, being then surrendered, in consequence of a change of property. The new register was issued at the request of the defendant, and upon his affirmation that he was the sole owner of the ship, and she vvas thereby registered in the usual form, as the sole property of the defendant. The affirmation of the defendant, when he applied for and obtained the register, was also produced, by which it appeared that he, on the same 15tli of October,1824, affirmed, in the usual form, that he then was the true and only owner of the ship, and that there was no subject or citizen of any foreign prince or state, directly or indirectly, by way of trust, confidence, or otherwise interested therein, or in the profits or issues thereof. And it was proved that mo change had taken place in the registry, intermediate the date, and issuing of the same, and the time the work was done.
To refute this documentary proof of ownership, the defendant produced and read in evidence a bill of sale of the ship from Nathaniel G. Minturn to him, the defendant, bearing date the same 15th of October, 1824, and being on the face of it an absolute transfer of the ship to him. He then called Minturn, the apparent vendor, to prove that the bill of sale, though absolute in its terms, was given to him, the defendant, and taken by him as collateral security for a loan of six thousand dollars made by Franklin and Minturn to Nathaniel G. Minturn, the owner oí the ship. The witness was objected to, as incompetent to testify to that point, and as being interested. He testified on his voir dire that he had no interest in the event of this suit; and not being deemed by the *13 Court, to be otherwise incompetent, he was admitted to testify in chief.
He proved that he was the owner of the Concordia on the 15th of October, 1824, and on that day borrowed of Franklin & Min-turn, of which co-partnership the defendant was a member, the sum of $6000, in the endorsements of their house, and gave the bill of sale of the ship to the defendant, as collateral security for the loan ; and that the defendant, afterwards,.on the 29th March following, to manifest the trust, gave a written acknowledgement as evidence of the contract. The instrument was produced, and being proved by the witness, was offered in evidence. The counsel for the plaintiffs opposed its reception, on the general ground, that the bill of sale being absolute in its terms, evidence was not admittable to contradict, vary, or explain its import, by showing it to be defeasible; and upon the special grounds, also, that it was not under seal, and was not executed simultaneously with the bill of sale, but after an interval of upwards of five months. It was, however, allowed to be read to the jury, subject to the objections to its competency. We are now to decide upon its title to admission in evidence.
First, then, could it be received to show that the bill of sale which professed and purported to be evidence of absolute ownership in the defendant, was in reality a security only for a loan from his house to Minturn 1 The general rule is, that a deed must be construed by itself, and that extrinsic evidence cannot be received to explain, vary, or contradict its sense or import, as collected from the terms it employs.
But the case of a mortgage or trust interest has long been an established exception to the rule; and the competency of extrinsic proof, to show that an absolute deed is to operate as a security for a loan, and not as an absolute conveyance, has been so often and so universally admitted, both in courts of law and equity, that it has grown up into an elementary principle of the law of mortgage. It is a principle peculiar to mortgages and trusts. Courts consider it as a necessary safeguard to borrowers, and a rule of evidence which policy and a sense of justice require them to apply, and to which even the solemn and conclusive nature of deeds *14 must bend. The deed is treated with all the respect and deference which can consist with a just regard to the protection of the borrower, and the extrinsic evidence is not received to qualify the deed, but to establish the fact of the loan; and it is the proof of the loan, on the security of the property vested by the deed in the vendee, that renders the deed thus given to secure it, a defeasible conveyance. The decisions of our own Courts are decisive on the point. In Marks v. Pell, [1 Johns. Ch. R. 594,] and in Strong v. Stewart, [4 Johns. Ch. R. 167,] it was ruled that parol evidence is admissible to show that a mortgage only, and not an absolute deed was intended. And in Henry v. Davis,[J. C. R. 90,] it was held, that a conveyance of real estate intended merely as a security for a debt, though absolute on the face of it,is a mortgage. The same principle was established in the Court for the Correction of Errors, in the case of Dey v. Dunham, [15 Johns. R. 555.]
The rule obtains equally at law as in equity, and both in England and in this country, it is an axiom that it is always competent to show that a transaction, appearing on the face of it to be a sale, was in fact a loan, and that the proof of the loan gives to the deed which is intended to secure it, the character of a mortgage. It is not essential that the defeasance should be by deed to produce that effect upon the absolute conveyance. The cases already cited conclusively show that the agreement which operates as a defeasance, or which, in other words, establishes the loan that produces that effect, may be without seal, or even by parol. Nor is it necessary that the declaration or defeasance, if in writing, should be executed simultaneously with the deed. In the case of Dey v. Dunham, the written defeasance was not given until six months after the deed was executed, and it embraced a subsequent loan and security, but the parol agreement for the loan on the security of the deed, was contemporaneous with the deed ; and that agreement operated to qualify the deed, and characterize it as a conditional and defeasible conveyance.
So in the case at bar : the agreement by parol for the loan upon the security of the ship, which preceded the bill of sale, impressed indelibly upon that instrument the character of a trust, or collateral security for the debt, and the subsequent declaration in *15 writing merely manifested the prior agreements, and preserved the evidence of it, by reducing it to writing. In strictness, however, the parol agreement for the loan, and the subsequent writing, did not create a mortgage-interest: for the condition must be in- ° corporated m the conveyance, or a written defeasance must be executed simultaneously with it, to constitute a technical mortgage; but that agreement created a trust which attached to the title vested by the bill of sale in the lender of the money, and which bound his conscience to hold the ship as a collateral security for the debt, and not as absolute owner of the property. This trust was in substance a mortgage-interest, though the conveyance was not in form a mortgage, and equity would enforce it, if sufficiently established by proof, notwithstanding that it was by parol ; or if any question could be made of the legal obligation of the lenders, on the ground of trust from the application of the statute provisions to the case, the subsequent declaration of the trust in writing, was sufficient to satisfy the terms of the act, and to establish the trust. The statute only requires that the trust shall be manifested by a declaration in writing, not that it shall be created by deed ; and it is well settled, that any writing expressing and declaring the trust, whether it be made at the time of the execution of the deed, or after it, will be sufficient evidence of the trust to entitle the cestui que trust to the aid of the Court in enforcing its performance, and that it is not necessary that the trust should be declared at the time it is created.
The case of Steere v. Steere, [5 Johns. Ch. R. 1,] is in point to show, that a trust need not be created by writing, and that when by parol it is sufficient to take it out of the statute, that it be manifested and proved by writing, under the hand of the party to be charged as the trustee. The solemnity of a seal to the declaration of trust, is not required to impress an absolute deed with the trust which that declaration manifests, and it is sufficient that the written declaration is made before the trust is sought to be enforced. The writing, therefore, which the defendant in this case gave to Minium in March, was a sufficient manifestation and proof of the trust of the bill of sale executed by him in the preceding October, and it was competent evidence to show that the bill of sale. *16 under the previous proof of the fact of the loan on the credit of the vessel, though absolute in terms, was merely a collateral security for the loan made by Franklin & Min turn upon the credit of it. If that evidence was admissible; it must surely be conclusive, for it is clear and positive.
But it was intimated that this evidence was only admissible to qualify the deed as between the parties, and could not affect the right of strangers. I can discover no line of distinction between parties and strangers, in the application of the rule. The question is, whether extrinsic evidence can be received to show that the transaction was a loan on the credit of the ship, as collateral security, and not a purchase of the vessel, and if the terms of the deed do not estop the party who receives it from showing that it was not a sale, but a pledge for a loan, he cannot be precluded from the benefit of that proof in a controversy with a party who seeks to charge him as absolute owner. If indeed, a stranger should be deluded or misled by this ostensible ownership of the vendee, and actually supply the ship on the credit of his responsibility, a question of some delicacy would be presented, which, however, would involve considerations beyond the mere fact of apparent title in the party. But it is not pretended that the plaintiff in this case has any such ground .of complaint, for it does not appear that he had any knowledge of the bill of sale, or gave any credit to the defendant. His right of recourse to the defendant, if he has any, results from the legal obligation of the defendant as owner of the vessel, or must rest upon the other grounds of liability imputed to him in his character of trustee or mortgagee. If he was, in judgment of law, the absolute owner, his obligation would be perfect, whether his ownership was known to the plaintiffs or not; but if he has disproved the charge of ownership, he has excused himself from the obligation which that relation would have imposed upon him.
It was strenuously urged that the register of the ship in his name, and his affirmation of the sole ownership of her, estop him from disclaiming his title as owner, and some irregularity of conduct seems also to be imputed to him in assuming that character. I see no just ground for reprehension in the change of the papers *17 at the Custom-house, nor any sufficient reason for the estoppel which is supposed to conclude him. The transfer of the register to himself might be necessary to his security, and the affirmation he made of sole ownership, indispensable to that transfer. That affirmation was true, for he was the sole owner in whom the whole legal title was vested by the bill of sale. His title was affected by the trust for Miuturn, but that trust was a beneficial interest, and not a legal title; and it was strictly true that no alien was interested directly or indirectly in her, and his affirmation goes no farther than to deny the interest of aliens. I discover nothing in the affirmation, or the register inconsistent with the defence he now makes. He was the true and sole owner of the ship; but he held her in trust for Miuturn, and every trustee is equally the owner of the trust estate which is vested in him.
Neither the terms of the registry act or of the revenue laws, nor the policy of the system, appear to me either expressly or by implication to exclude trusts of vessels for citizens, or to require the disclosure of such trust by the trustee. It was the secret interest of foreigners in American vessels, that Congress meant to prohibit, and against which the provisions of the act are intended to guard,—and in that spirit the oath plainly draws the distinction between the citizen and the foreigner. It prescribes a searching form of denial of all possible interest of aliens; but it confines that denial to aliens, and thereby impliedly allows the subsistence of such interests in citizens. The other provisions of the acts to which we are referred obviously contemplate the case of part owners in whom the legal title to the ship is partly vested, or whose names appear upon the bill of sale or the registry, and not to mere cestui que trusts whose title or interest the statutes disregard.
I am satisfied therefore, that the defendant was not incorrect in his acts at the Custom-house, and ought not to be estopped by those acts, or his affirmation of title in himself, from shewing the truth of the transaction. And the disclosures he has made appear conclusively to shew that he was not the absolute owner of the ship, but held her in trust, as security for the loan made by his house on the credit of her.
*18 The next enquiry is, whether he was in possession of her during the time that the repairs were put upon her by the Plaintiff: and the testimony appears to me equally clear and decisive against the fact of possession, as against the absolute ownership of the defendant. Minturn, who best knew the facts, testifies positively that he had himself the exclusive posssession and sole charge and management of the ship, during the whole period in question, and that the defendant never took possession of her or had any charge or agency concerning her, or exercised any control or ownership over her, until the interference to prevent the the voyage to Turks Island, about a month before the commencement of this suit. B. G. Minturn and the master confirm and corroborate his statement, and the testimony of the plaintiff conduces to the same result.
In opposition to this strong current of oral testimony, the acts of the defendant in taking the title and changing the register, and the part he took in clearing out the ship for her voyages, with his interdiction of the projected voyage to Turks Island, and his subsequent sale of the vessel, are the only proofs of possession relied on. What do they weigh? The change of papers was important to his security ; and the clearance of the vessel was necessary to her. employment—they were mere formal acts entirely consistent with his character as Trustee, and were no evidence of actual possession in him, not inconsistent with the possession of the cestui que trust. The interdiction of the voyage to Turks Island and the sale of the ship, were acts of possession as well as as ownership, but they were long subsequent to the repairs for which the plaintiff sues, and were acts done with intent to wind up the concerns of the trust,, and were the necessary means for enforcing his security and realizing his debt. He did not take possession of the ship for the purpose of employing her, but for the purpose of sale, and he cannot be charged by that possession with the debts antecedently contracted. ’
Upon the whole I see no reason for setting aside the verdict..—. The charge of the Judge was strictly correct in point of law, and the jury have found a verdict which is fully supported by the evidence. The motion for a new trial must therefore be denied.
*19 Oakley, J.
This was an action for repairs done to the ship Concordia, between the 10th day of September, 1827, and month of June following. The repairs were ordered by the captain of the vessel, but the evidence clearly shows that they were in fact made on the credit of Minturn. A bill of the repairs was rendered to him, and his notes taken for the amount, which were partly paid. There is no proof, that the plaintiffs, at the time of making the repairs, knew that the defendant had any interest in the vessel; no account was ever rendered to him, nor was any demand ever made on him for payment. After the failure of Minturn, this action was brought with the view to charge the defendant, as owner of the ship.
It appeared in evidence, that for a long time previous to the 15th of October, Minturn was the owner of the ship. On that day he executed to the defendant an absolute bill of sale of the vessel, and the ship’s papers were changed at the custom-house. The defendant made the usual oath of ownership, and the vessel was registered in his name, and continued to be registered in his name until after the commencement of this suit. It was clearly proved, however, that the bill of sale was given as a mortgage, to secure to the defendant a large sum actually loaned to Minturn on that day ; and was so understood and agreed to be, by the parties at the time it was executed. That the defendant, on the 29th of March, 1825, signed a written agreement, and delivered it to Minturn, setting forth that the transfer of the ship to him, was as security for the said loan, and engaging to reconvey the same on payment of the money. It also clearly appeared that the defendant never had possession of the ship, and never received any of her earnings, and never in any manner interfered with the control of the vessel by Minturn, until long after the repairs in question were made. The vessel was always cleared out at the custom-house by Minturn, the defendant making on those occasions the necessary oaths as registered owner.
The plaintiffs contend, in the first place, that parol evidence was inadmissible, to show that the bill of sale was intended as a mortgage. This point seems to be decided in the case of Champlin v. *20 Butler, [18 J. R. 169.] In that case, as in the present, there was an absolute bill of sale, and parol evidence was admitted to show that it was intended as a mortgage. In the present instance, however, it would seem unnecessary to rely on the parol evidence of the understanding of the parties at the execution of the bill of sale. On the supposition that it was then an absolute sale, it was certainly competent for the parties, by a subsequent written agreement, to convert it into a mortgage. This was done by the instrument of the 29th of March, 1825, and long before the repairs in question were made upon the vessel.
It is in the next place contended by the plaintiffs, that the oath of the defendant, and the registry of the vessel at the customhouse, are conclusive evidence of ownership of the vessel in him. The law has been decided to be otherwise. It has been repeatedly held, that the registry at the Custom-house does not determine the ownership of a vessel, and that its object is merely to show her national character, and to entitle her to the advantages secured by the laws of the United States to vessels of our own country. [Sharp v. United Ins. Co. 14 J. R. 201. Leonard v. Huntington, 15 Ib. 302;] And in Weston v. Penniman, [1 Mason, 318,] it is considered by Judge Story, that a mortgagee of a vessel may declare himself the legal owner, for the purpose of the registry acts, without in any manner altering the relations existing between him and the mortgagor. The defendant, then, is not concluded by registering the vessel in his own name, because the act is consistent with his character as mortgagee, and is open to explanation, in the same manner as the bill of sale.
The defendant, then, being mortgagee of the ship out of possession, as found by the jury in this case, the law seems to be clear that he is not liable for repairs, unless they are made upon his credit, or by a special contract with him. It was so expressly held by the Supreme Court in McIntyre v. Scott, [8 J. R. 159,] the leading circumstances of which case were very similar to those of the present; and the doctrine of that case has been repeatedly recognized since. [Champlin v. Butler, 18 J. R. 169. Leonard v. Huntington, 15 J. R. 298. Thorn v. Hicks, 7 Cowen’s *21 R. 697.] These cases settle the point too clearly to admit of doubt.
The plaintiffs have further insisted, that Minturn was an incompetent witness, on the ground of interest. The plaintiffs sought to charge the defendant as owner of the ship. After they had offered prima facie evidence of that fact, the defendant proved the sale of the ship by Minturn to him, which on its face was absolute, and then called Minturn as a witness. He was objected to as incompetent. As the case then stood, there was, clearly, no ground for the objection, and it was properly overruled. He was then sworn on his voir dire, and stated that he had no interest in the controversy, and was then sworn in chief.
When the witness was sworn in chief, there certainly was no ground for rejecting him as interested. His relation to the vessel had not appeared. Apparently he had parted with all right to her, and as he then stood, was manifestly interested to fix the expense of the repairs on the defendant, by which he might have discharged himself from the plaintiffs’ claim on him. On the supposition that his testimony shewed him interested, in any degree in favour of the defendant, I do not find that the Judge was requested to exclude it from the case, or to instruct the jury not to regard it. Under such circumstances, as the defendant’s whole case was clearly proved by other witnesses, I do not think that a new trial ought to be granted, though Minturn should be considered as an incompetent witness.
His incompetency, however, is supposed to consist in this. Showing himself to be the mortgagor of the ship, and in the exclusive possession of her, it is contended, that in case of a recovery by the plaintiffs, he would be liable to indemnify the defendant against the costs of this suit, and that such an interest excludes him as a'witness, on the authority of the case of Hubbly v. Brown. [16 J. R. 72.] I cannot perceive how the defendant in this case stands in the relation of surety for Minturn, for the repairs made to the vessel. The defendant, if liable at all, is so as owner, or mortgagee in possession. If liable in either character, he was bound to pay in the first instance, on the ground that the contract for the repairs, in judgment of law, was made directly between *22 him and the plaintiffs. He could then have no pretence to call on Minturn to indemnify him against costs. He might charge him with the amount paid for repairs, as an expenditure on the vessel, while in his possession, but could not demand the costs of a suit, which was the consequence of his own default.
The witness, in my opinion, was equally liable to either party, for the amount of the plaintiffs’ demand, whatever may be the issue of this cause, and was therefore a competent witness for either.

Motion for a new trial denied.

[E. Anthon, Att'y for the deft.]