Hesketh *v.* Stevens.

SAME TERM.  *Before the same Justices.*

HESKETH *vs.* STEVENS.

A mortgagee of a vessel, not in possession, is not liable for repairs done upon the vessel.

The holding of a bill of sale, or having the mere legal title to a vessel, does not of itself render a party liable for repairs.

The credit is supposed to be given to the party in possession acting as owner.

And as long as he remains in possession, with the consent of the party holding the legal title, and manages and controls the vessel, and receives the profits, he is, for all practical purposes, the owner; especially when he is so treated by the persons doing work upon the vessel.

ASSUMPSIT, tried at the New-York circuit in March, 1846, before EDMONDS, circuit judge.  The action was brought to

recover the amount of a bill for repairs done by the plaintiff, as a blacksmith, upon the steamboat Portsmouth. The plaintiff proved the performance of the work, and that the same was done by the direction of the engineer of the boat. To prove that the defendant was owner of the boat, the plaintiff proved that she was registered at the custom house in his name, on the 10th of October, 1843, at which time the defendant made an affidavit that he was the true and only owner of the said vessel. The defendant read in evidence the deposition of P. Cagger, who testified that from 1836 until May, 1845, he was the partner of the defendant and was intimately acquainted with his business, and was acquainted with, and knew, the nature of the defendant's interest in the steamboat Portsmouth; that the only right, title or interest which he had was as mortgagee thereof, which mortgage was created by a bill of sale of said boat from Isaac V. Baker to the defendant, and a defeasance from the latter to Baker; which papers were executed at the same time, and were parts of the same transaction and agreement. That the defendant never had possession of the boat, directly or indirectly, until Cagger, as his agent, took possession thereof, and sold it under the mortgage, on the 20th of July, 1844. That such possession only lasted a few minutes. That the boat was always in the possession of Peter Comstock, who claimed sometimes to act as agent for the said Isaac V. Baker, who was his son-in-law, and sometimes to act as agent for Allen Comstock, the son of the said Peter. That Comstock employed the master and hands of the boat before she was so mortgaged to the defendant, and continued to receive all the proceeds and earnings of the boat, up to the day she was sold by Cagger, as agent for the defendant. That the boat was registered by Cagger in the defendant's name at the request of Comstock, and for his benefit; Comstock paying the fees therefor. The bill of sale was dated Sept. 26, 1842, and conveyed the vessel to the defendant, absolutely, with her tackle, apparel and furniture, subject to a mortgage thereon for $8000 held by Lewis Barnes. The instrument called a defeasance, executed by the defendant to Baker, bore date March 2, 1843. It acknowledged the execution of the bill

of sale, on that day, "for the purpose of securing and paying the following debts;" naming several debts due to other persons, from Baker & Comstock, and an indebtedness to the defendant and Cagger, the amount of which was not specified. The instrument concluded as follows: "And after the payments aforesaid I am to refund the residue of the avails thereof to the said Isaac V. Baker, on demand, after the above are paid. All of the above provisions, however, are subject to the payment of such sums as may be required to be paid upon a mortgage of $8000, now held upon said boat by Lewis Barnes."

The testimony having closed, the defendant's counsel insisted, 1st. That the plaintiff, from his own proof, was not entitled to recover any thing against the defendant, there being no proof whatever that the defendant had ever requested the plaintiff, or any body else, to do the work pretended to be done, or any part of it, or that he ever knew it was done, and that if he were the owner of the vessel he would not be liable for work of this description done without his request, knowledge or assent. 2. That it appeared from the defendant's evidence that his only right to, or interest in the boat was as mortgagee, and that he never in any manner had possession of the boat. The counsel for the plaintiff insisted that a mortgagee, whether in possession or not, was liable for repairs of the vessel, and also that the conveyance to the defendant, and the defeasance from the defendant to Baker the vendor, did not constitute a mortgage. The plaintiff's counsel insisted that the plaintiff was entitled to recover interest on his account. His honor the circuit judge recommended a verdict subject to the opinion of the court upon a case to be made; to which the counsel for the respective parties assented; and thereupon a verdict for $203,97 was taken for the plaintiff, subject to the opinion of the court, upon a case.

*G. A. Shufeldt,* for the plaintiff.

*S. Stevens & H. B. Cowles,* for the defendant.

*By the Court,* EDWARDS, J. It appears by the case, upon which the questions before us are presented, that Isaac V. Baker,

who was the owner of the steamboat or vessel called the Portsmouth, executed a bill of sale of her to the defendant in this suit, dated December 26, 1842. It also appears that the defendant executed to the said Baker an instrument in writing, under seal, dated March 2, 1843, in which he acknowledged the execution of the bill of sale, and stated that it had been executed to him for the purpose of securing and paying certain debts, which were particularly mentioned; and declared that after the payment thereof, he was to refund the residue of the avails to Baker. This instrument also declared that all the provisions contained in it were subject to the payment of such sums as were required to be paid upon a mortgage on the vessel for $8000. The bill of sale, and the instrument executed by the defendant bear different dates, but the last mentioned instrument contains a recital that they were executed on the same day, and the testimony of Cagger shows that such was the fact.

The first question to be considered is, what is the legal effect of the two instruments?

It is evident that the defendant was not made the absolute owner of the vessel, with the right to take possession of her, and use her as his own, without further accountability. He was vested with the ownership, it is true, but only for a particular purpose; that is, to secure and pay certain debts due by Baker, and to return the residue of the avails to him. If in the mean time, however, Baker had paid the debt, inasmuch as the purposes of the transfer would have been satisfied, there is no doubt that he would have been equitably entitled to a retransfer to himself; or, in other words, he had the right of redemption. And, in whatever light the defendant is to be regarded, his rights are certainly not greater than those of a mortgagee.

It would appear from the instrument executed by the defendant, that some of the debts, for the security and payment of which the bill of sale was executed, were not due to him. But that fact would not essentially change the character of the interest acquired by him. It would impose additional responsibilities upon him. It would make him a trustee for the benefit of the other creditors mentioned, to the extent of the debts sta-

ted to be due to them; but it would not require him to take possession of the vessel, and use her, and receive the profits. Indeed, such a result does not seem to have been contemplated; for the object of the transfer was security, and, if necessary, payment; which was evidently intended to be made by a sale, for a provision is made for the disposition of the residue of the avails after a sale.

The next question to be considered is, whether the defendant is liable for the work which was done upon the vessel, between the time of the execution of the two instruments, and the final sale?

It appears from the testimony of Cagger, that the defendant did not in fact take possession, but that, on the contrary, Baker remained in possession, receiving the profits, while the services, to recover the price of which this suit was brought, were rendered, and until the final sale of the vessel by the defendant on the 20th of July, 1844; and that the defendant then took possession by his agent for a few minutes only, and merely for the purpose of making a sale.

It is well settled that a mortgagee of a vessel, out of possession, is not liable for repairs. (*Thorne* v. *Hicks,* 7 *Cowen,* 697. *Ring* v. *Franklin,* 2 *Hall,* 1. *McIntyre* v. *Scott,* 8 *John.* 159. *Champlin* v. *Butler,* 18 *Id.* 189. *Miln* v. *Spinola,* 4 *Hill,* 177.) And, in the case of *Leonard and McCartee* v. *Huntington,* (15 *John.* 289,) where a contract had been entered into for the sale of a vessel, and possession had been taken immediately, but it was agreed that a bill of sale should not be given until the whole of the purchase money was paid, and, in the mean time, the register stood in the name of the original owner, who, however, exercised no control over the vessel, it was held that he was not liable for repairs made by the direction of the master. (*See also Wendover* v. *Hogeboom,* 7 *John.* 308, *S. P.*) In the case of *Thorn* v. *Hicks,* (7 *Cowen,* 697,) the owners of a sloop entered into a contract with another person that he should take and run the sloop in the freighting business, and out of the avails should pay the owners a certain sum of money, but that, until that was paid, the legal title should remain in the

vendors, and, when paid, should vest in the vendee.   The vendee took possession of, and used the sloop ; and it was held that the vendor was not liable for the acts or contracts of the master. And in the case of *Dunham & Browning* v. *Mellen et al.* which was decided in this court at the last September term, where the owner of a vessel had executed a bill of sale, and delivered possession of the vessel to the vendee, but the bill of sale was left in *escrow*, until the vendee should complete his payments, it was held that the vendor was not liable for repairs put upon the vessel, during the time when she was in possession of the vendee, and while the bill of sale remained in *escrow*.

The principle which is to be deduced from all these cases is, that the holding of a bill of sale, or having the mere legal title to a vessel, does not of itself render a party liable.   The credit is supposed to be given to the party in possession acting as owner, and, as long as he remains in possession, with the consent of the party holding the legal title, and manages and controls the vessel, and receives the profits, he is, for all practical purposes, the owner ; especially when he is so treated by the persons doing work upon the vessel.

In the case before us the whole credit must have been given to Baker.   He acted as owner, and received the profits.   The defendant derived no benefit under the bill of sale to him, except so far as the right to sell the vessel and pay the debt due to himself, was concerned.   If he chose to select his own time for exercising that right, it was a matter solely between himself and the persons for whose benefit the sale was to be made.   At least, a person doing work for the vessel, on the credit of the party in possession, could have no right to complain.

We are of opinion, upon the case presented to us, that judgment should be entered for the defendant.

Judgment for the defendant.