By the Court.
Duer, J.
The admissions and stipulations of the defendant precluded any defence upon the trial, except under the sixth plea, and after much consideration and careful examination of the authorities, we are of opinion that the evidence offered in support of this plea, and which was rejected by the judge, ought to have been received. The exclusion of this evidence would have been entirely proper, had the offer been limited to proof of the facts that the defendant purchased the lease as a trustee for his brother, Andrew, under an agreement that he would transfer the title upon the repayment of the moneys which he advanced for it. "Waiving the objection that this agreement was only verbal, so long as it remained executory, it would not have had the effect of altering the character and responsibility of the defendant as assignee. Even the possession of Andrew during this period would, in judgment of law, have been the possession of the defendant.
But the offer as made was not thus limited. It embraced the additional facts that the agreement between the brothers was *527 carried into execution by tbe repayment to tbe defendant of all bis advances, before tbe rent and taxes wbicb this suit was brought to recover became due; that from tbe time of this repayment, Andrew was in the actual possession of tbe premises demised as assignee, and was recognized and' accepted as such by tbe plaintiff; and we are convinced that these facts, if proved,- would have amounted to a full defence. They would have been a complete answer to tbe necessary averments in tbe plaintiff’s declaration, that tbe rent and taxes wbicb be seeks to recover became due, and were in arrear, whilst tbe defendant continued to be the assignee of the lease, since they would have shown, that before that time the liability of the defendant as assignee had wholly ceased. It is quite certain .that an assignee is only bound by tbe covenants in tbe lease, so long as be retains tbe possession, by himself or bis tenants, of tbe demised premises. It is not sufficient to show that be has a paper title and a legal right, for be is not liable to the reversioner upon tbe ground of a privity of contract, but solely by virtue of bis actual occupation and beneficial enjoyment. (Eaton v. Jacques, Doug. 459; Taylor v. Shum, 1 Bos. and Pull. 23; Armstrong v. Wheeler, 9 Cow. 88; Bac. Ab. Tit. Covenant, E, 4; Woodfall, L. and T. 348.)
It is needless to inquire whether tbe original agreement between the defendant and his brother was valid or not. It may be admitted that, so long as it remained executory, it created no trust that a court of equity could enforce, or a court of law suffer to be proved, but it is not to be doubted, that from the time that tbe agreement was ..fulfilled upon tbe part of Andrew by tbe payment of tbe consideration, be became tbe equitable owner, and as such, bad an immediate and exclusive right to tbe possession of the premises, and the perception of tbe profits. From that time the beneficial enjoyment was in him and in him alone, and all that remained to the defendant was a naked legal title, tbe conveyance of wbicb Andrew was entitled to demand, and a court of equity, if necessary, would have compelled. Andrew was therefore in possession, not under or as tenant of tbe defendant, but in bis own right, and by a paramount title, and con *528 sequently the defendant, being no longer in possession in fact or, by construction of law, was discharged from all liability as assignee.
There would be some inequality and apparent injustice in the application of this doctrine to the present case, if we were compelled to say that Andrew, from the want of a legal title, or a formal written assignment, was exempt from liability, as well as the defendant, but’the law imposes upon us no such necessity. On the contrary, had the plaintiff chosen to sue Andrew, the decisions to which we shall refer render it certain' that he must have succeeded. The declarations of Andrew, that he was in possession as tenant of the plaintiff and assignee of the lease, would have concluded him; he would have been estopped from setting up a title in a third person as a bar to a recovery; and even had an outstanding legal title been shown of admitted, proof of his equitable ownership, joined to his actual possession, would have sufficed to warrant a judgment against him. It is an obvious and necessary conclusion, that the present action, if the defence which was offered to be proved can be substantiated, ought not to be maintained.
The plaintiff had not an election as to the person against whom, as assignee, his suit should be brought. His sole right of action was against the assignee in possession, and if Andrew L’Amoreux was liable as such, the present defendant was discharged. (Sharpe v. Ingraham, 4 Hill, 115 ; Williams v. Woodward, 2 Wend. 492 ; Berry v. McMullen, 17 Sergt. and Rawle, 84; 2 Phillips’ Ev. 89.)
The objections that parol evidence was inadmissible to prove the equitable ownership of Andrew L’Amoreux, and therefore that in judgment of law he was in possession only as tenant at will of the defendant, are founded upon a singular misapprehension of the existing law, and are plainly untenable. Although a verbal agreement for the purchase of any estate or interest in lands is wholly void, yet when by the payment of the consideration money it has been partially executed, the vendee acquires a perfect title in equity, and the vendor, although retaining the legal title, is converted into a naked *529 trustee. He has no beneficial interest, but is bound to admit the vendee into possession, and to surrender to him the entire profits. The trust in these cases is not necessary to be declared in writing, but arises by implication of law, upon proof of the facts, and we refuse to cite any authorities in support of positions that no judge has ever doubted, and every lawyer is presumed to know. Implied and resulting trusts are excepted from the provisions of the revised statutes from their very nature. Their existence, generally speaking, can only be established by parol evidence, and the powers of the court of chancery to compel their performance, and protect the rights and interests of the cestui que trust, have in no respect been abridged or impaired. (1 R. S. 728, § 50; 2 R. S. 85, § 10.) We therefore repeat, that assuming the truth of the facts that were offered to be proved, Andrew L’Amoreux was in possession, not as tenant at will, but in his own right as assignee, and could never have protected himself from his liability as such, by showing that the legal title remained in the defendant.
The learned counsel for the plaintiff referred us to the case of Port v. Jackson, (17 John. 239,) as an express decision, and therefore a controlling authority, upon the questions that we have considered, but the cases are in reality very distinguishable, and the resemblance, which at first view they seem to exhibit, is found upon a near approach wholly to vanish. That the essential difference betweeii the cases may be understood, it is proper to advert to an important distinction between the liability of the original lessee and of a subsequent assignee. The lessee, although he may have parted wholly with the title and the possession, continues to be bound by the covenants of the lease, while the assignee, as we have already seen, is liable only while he retains the possession. The reason of the distinction is, that the liability of the former is founded upon a privity of contract; that of the latter upon a privity of estate, which in all cases requires an actual occupation to gender it binding. In Port v. Jackson, the action was brought by the original lessee against his immediate assignee - to compel the payment of rent. It was founded, however, upon the peculiar *530 terms of the' assignment, winch was not a simple transfer of title, but a special contract, containing an express stipulation upon the part of the assignee, that he would perform and fulfil all the covenants in the lease, including therefore the covenant for the payment of rent; thus placing the parties in the same relation to each other as that which exists between the lessee and the owner of the reversion. Among other defences, the defendant pleaded that he had assigned the lease, and that his assignee had entered into possession and had been accepted as tenant by the reversioner, and this plea, upon demurrer, was held to be bad. The decision, however, was rested upon the single ground, that the defendant had rendered himself personally liable by the terms of his own contract, and that a liability thus created is not affected by the change of title and possession; and the reasoning of the learned judge who delivered the opinion of the cburt plainly admits that had the suit been founded upon a privity of estate and not of contract, the sufficiency of the plea as a bar to a recovery could not have been impeached. This case, therefore, so far from contradicting, is in perfect harmony with the present decision.
The other question that was raised upon the trial, namely, whether the plaintiff could recover for the taxes without proof of their actual payment, we think was rightly decided in favor of the plaintiff; but as we are satisfied that the evidence which was excluded ought to have .been received, as constituting a valid defence, there must be a new'trial with costs to abidé the event.
The cause was again tried before Oaklet, Ch. J"., without a jury, in December, 1850. On this occasion, the plaintiff’s testimony was as before. Andrew L'Amoreux, for the defendant, testified that the defendant bid off the lease at a master’s sale, and paid the price, $725. He and Andrew went to look at the place before the sale, and Andrew said it would be a nice little home for him. After the sale, Andrew asked the defendant if he intended him, A., to take possession of it, and he observed that he did, and asked how A. could pay the money. A. told-him *531 he could pay it in small instalments. A. took possession of tbe premises tbe next spring, (1881,) and bas been in tbe exclusive possession ever since. He paid to the defendant, before 1840, tbe entire purchase money. (Tbe statement of the witness on this point was a little confused.) A. paid all tbe rent and taxes that were paid, from tbe time of tbe master’s sale. There was no writing whatever executed by the defendant, or between him and A., or by A. as to tbe premises or tbe money to be paid; A. never asked him for a transfer of tbe lease, and be never promised or agreed to give him one. When tbe lease expired in 1846, A. applied to tbe plaintiff for a new lease, and was told be must give up tbe old lease, and in lieu of that be sent to the defendant, procured tbe master’s deed and delivered it to tbe plaintiff, who thereupon gave a new lease for ten years to Daniel L’Amoreux, another brother of A. Ever since tbe master’s sale, A. bas -been insolvent.
J. L’Amoreux, defendant in person.
Jona. Miller, for the plaintiff.
Tbe defendant then proved twenty-two receipts for tbe rent, from August, 1881, to August, 1845, all expressing tbe rent to have been received from Andrew L’Amoreux, and not mentioning or referring to tbe defendant.
Tbe judge gaye a pro forma judgment for tbe plaintiff, in order to have tbe case presented to tbe general term for decision.
By the Court.
Duer, J.
Our further examination of this case bas confirmed us in tbe views that we expressed in granting a new trial.
It is true that tbe defendant has failed to prove all tbe facts that be offered to prove upon tbe first trial; but be bas proved all that were essential to bis defence — all that were necessary to show that be bad ceased to be liable as assignee, when the rent and taxes accrued that are now sought to be recovered. He bas proved that tbe whole of tbe purchase money which he bad originally advanced had been repaid to him by bis brother An *532 drew, who, from the time of such payment, was in the possession of the demised premises, not as tenant of the defendant, but in his own right as equitable owner.
It has, indeed, been strenuously insisted that Andrew had no estate or interest whatever, and that it is a mistake to suppose that the relation of cestui que trust and trustee subsisted between him and the defendant; but we must still deem it unnecessary to cite authorities to prove that he in whom the legal title is vested is a mere trustee, when another person has an exclusive right in equity to the possession and profits, and may, when he pleases, demand a conveyance. It is familiar law, that in all cases where there is a valid contract for the sale of lands, whether valid in the first instance, or rendered so by a part performance, a trust arises between the vendor and the pur-. chaser; this trust, so long as the consideration money remains unpaid, is inchoate and contingent; but it beco'mes absolute when the contract has been fulfilled by the purchaser, and from that time the vendor, until he executes and delivers a deed, is, in the strongest sense of the term, a mere or naked trustee, bound to convey upon request, having no power of disposition or control, and no right of enjoyment. He is the nominal, the purchaser, the real owner; and so far is it from being true that the latter has no interest in the land, that, in the judgment of a court of equity, he has an estate which, when the purchase embraces the fee, is not merely assignable, but descendible and devisable. We content ourselves with referring to chapter 4t in Sir Edward Sugden’s learned wprk, where the subject is largely and ably treated, and all the authorities collected and explained. (1 Sugden’s Vendors, 171.)
It was urged upon the hearing, although the objection is not distinctly stated in the printed points, that there was, in reality, no such part performance of the unwritten agreement between Andrew L’Amoreux and the defendant as could have justified a court of equity in decreeing its specific execution, and that the sole remedy of Andrew, had the defendant chosen to eject him, was to recover back in a suit at law, the moneys he had paid ; and it must be admitted that, if these positions are true, An *533 drew held the possession, not in his own right, but by tbe mere sufferance of tbe defendant, and consequently as bis tenant. But tbe cases to wbieb we were referred are very far from sustaining tbe argument tbat was founded upon them; they are all cases in which tbe possession bad not been taken by tbe purchaser, and a part only of the consideration money bad been paid. Where tbe whole of tbe purchase money has been paid, and tbe purchaser has been admitted into tbe possession, it has never been doubted tbat equity regards him as tbe real owner, and if a full conveyance of tbe title, when demanded, is withheld, will compel its delivery. (2 Story’s Eq. Jur. p. 66, §§761 and 762 ; Sugden’s Yendors, 79, 80,) •
Hence there is no ground for tbe assertion tbat Andrew, bolding the possession in bis own right, and receiving tbe rents and profits to bis own use, was, in any sense of tbe term, tbe tenant of tbe defendant, and if not bis tenant, unless be was altogether discharged from tbe payment of rent, which it would be absurd to suppose, be was tbe immediate tenant of tbe reversioner, and liable for tbe rent as an assignee in possession. We have never denied tbat tbe liability of an assignee is founded upon tbe privity of estate; but tbe error of tbe learned counsel for tbe plaintiff consists in supposing tbat this privity must continue to exist so long as tbe assignee retains tbe legal title. We, on tbe contrary, have beld, and must continue to bold, tbat tbe privity is dissolved when tbe assignee has parted with all bis beneficial interest, and has yielded the possession to tbe beneficial owner. The privity is dissolved, for tbe plain reason that tbe beneficial owner then becomes tbe immediate tenant of tbe lessor or reversioner, and, as such, directly liable to him upon tbe covenants in tbe lease.
It is, however, alleged, tbat tbe cases upon which we relied in support of our opinion, and especially tbe leading case of Eaton v. Jacques, have been overruled, and can no longer be referred to as evidence of tbe existing law; and it is further insisted tbat if these cases are admitted to be law, there is no such analogy between them and tbe present as ought to control our decision. These positions we shall briefly examine.
*534 It is undoubtedly true, that the decision of Lord Mansfield and his. brethren, in Eaton v. Jacques, after having been considered as law in England for more than half a century, was at last overruled by the opinion of a majority of the judges, in Williams v. Bosanquet, (1 Brod, and Bing. 238.) But it is equally true, that, for a long period of time, it has, in this state, been the settled and established law; established as such by a series of decisions which, whatever may have been done in England, we deny that this court, or any other tribunal, in the legitimate exercise of its powers, can now reverse or refuse to • follow. Chancellor Walworth says, (2 Paige, 70,) that Eaton v. Jacques is the settled law in this state. (And see Astor v. Miller, 5 Wend. 603.) That such was the settled law at a much earlier date, we may cite McIntyre v. Scott, (8 John. 159,) which was decided upon the same principle as Eaton v. Jacques, and partly upon its authority.
It is not denied that the court of King’s Bench, in Eaton v. Jacques, seems to have held that an assignee, out of possession, is not liable upon the covenants in the lease; but it is contended that as the assignment in that case was not absolute, but only by way of mortgage, the decision must have proceeded upon the ground that the mortgage was a mere security for a debt, and had not operated to change the title; in other words, that a mortgagor, so long as he retains the possession, retains the title, and is to be regarded not merely as the equitable, but the legal owner. It may be admitted that such is the reasoning of our supreme court, in one or two of the cases in which Eaton v. Jacques has been followed, but it is very certain that it was not, and could not have been, the ground of the original decision. There never has been a period in the history of the law in England, when a mortgage has not been held to pass the legal title to the lands which it purports to convey, never a period when the mortgagee has not been held, in a court of law, to be the real, and, when the mortgage is forfeited, the absolute owner.
It is true, that Lord Mansfield, in Eaton v. Jacques, spoke of the mortgage as a mere security; but this was for the sole pur *535 pose of showing that the mortgagor, so long as he was suffered , to remain in possession, and receive the rents and profits to his . own use, was to be regarded, not as the tenant of the mortgagee, . but as the real, because the beneficial owner; and it was in en-, tire conformity to this view, that Mr. Justice Buller stated the question to be, whether “ mere nominal assignees with the naked right, or only substantial assignees in the actual enjoyment of the estate, shall be liable for the rent,” which is precisely the question that we are now called upop to decide. When the rent accrued which the plaintiff seeks to recover, this defendant had only the naked right; his brother was the real owner, in the actual enjoyment of the estate. Eaton v. Jacques is by no means the only case in which an equitable owner, in possession, , has been held to be liable upon the covenants in the lease, in preference to the person out of possession, in whom the legal, title is vested, and it is not a little remarkable, that one of the cases in which this doctrine has been held, has been referred to , by Mr. Powell, (Powell on Mortg. 241,) not as confirming, but as contradicting and overruling the prior decision of Lord Mansfield and his associates. In Lucas v. Commerford, the case to which we allude, and which is reported in 1 Ves. Jun. 235, and also 3 Brown’s Ch. Ca. 166, it was determined by Lord Thurlow. that a mortgagee of a lease was bound by all the covenants running with the land, and it is doubtless for this reason that Mr. Powell considers the judgment as in conflict with that of the King’s Bench in Eaton v. Jacques ; but it escaped his attention, as Chancellor Walworth remarked, and as is manifest by comparing the two reports of the case, that the mortgagee whom Lord Thurlow held to be liable, was in the actual possession of . the demised premises, and what is still more material, as bearing upon the present ease, that he had not a legal, but only an equitable title; the lease had not been assigned to him at all, it, had merely been deposited with him as a security, and his only-estate and interest in the lands was founded upon the English, doctrine that in equity such a deposit is equivalent to an actual mortgage. It seems to us impossible to trabe the faintest line of distinction between Lucas v. Commerford and the present *536 case. Tbe mortgagor, who,, as a necessary consequence of the decision, was discharged, held the legal title as assignee, but was out of possession. The title of the person who, upon the ground of his possession, was held to be liable, was purely equitable, and rested solely in parol.
It is now settled in England, that a mortgagor m possession is to be regarded as the tenant of the mortgagee, (Partridge v. Beri, 1 Dow. and Ryl. 272,) and it is chiefly, we conceive, upon this ground, that Baton v. Jacques has been overruled; but the doctrine of Lord Thurlow in Lucas v. Commerford, that an equitable owner in possession, and holding therefore in his own right, and not as .tenant of the legal owner, is bound by the covenants in the lease, has certainly not been overruled, nor, so far as we have been able to discover, has it ever been drawn in question.
Nor have all the decisions in this state, in which a mortgagee, out of possession, has been held not to be liable as assignee, proceeded upon the ground that no legal title was vested in him by force of the mortgagee. Such could not have been the ground of the decision in Walton v. Cronly, (14 Wend. 63,) for the deed, which in that case, by the introduction of parol evidence, was converted into a mortgage, was absolute upon its face, and hence its necessary effect was to pass the legal title; and this the court plainly admitted, by saying that a purchaser, without notice, would have acquired an absolute estate. No estate whatever could have passed to a purchaser unless- by force of the deed; thp legal title was vested in the mortgagee.
There are other cases which, in principle, are not distinguishable from the present. The owner of a ship, by the mercantile law, is personally liable for all necessaries furnished to the master, but it is certain that a mortgagee of the ship, when out of possession, is not thus liable. He is not liable even when, by the forfeiture of the mortgage, he has become, in judgment of'law, the absolute owner, and nothing remains to the mortgagor but a mere equity, which, in other cases, a court of law must refuse to notice or enforce. (Jackson v. Vernon, 1 Black. 104; McIntyre v. Scott, 8 John. 159.) The ground of these de *537 cisions is, that the expenses of the ship ought to be defrayed from its earnings, and consequently that the mortgagor, so long as he is permitted to retain the possession and receive the freight, is to be considered as the owner, and, as such, exclusively liable.
This reasoning would have applied to the present case, even had a portion of the purchase money which the defendant advanced remained unpaid, and he had continued to hold the title, not as a mere trustee, but for his own security ; but it applies with a force which we feel is not to be resisted, when we reflect that he had parted with all his interest, and that the title which he retained was purely nominal, while his brother enjoyed the-possession in his own fight, and for his own exclusive benefit. The rent and taxes covenanted to be paid in a lease are the consideration of the demise. They are the charges, to which the possession and enjoyment of the lands, it is meant, shall be subject, and it is manifestly just that he who alone receives the benefits which the lease secures should alone sustain the burden which it imposes. The maxim emphatically applies, qui commodum sentit débet sentiré et onus.
We must therefore adhere to the opinion, that Andrew L’Amoreux, from the time he became the equitable owner, was exclusively liable for the rent and taxes, which the plaintiff seeks the aid of the court to recover from the defendant. Unless we mistake entirely the import of the authorities, the law is far from compelling us to grant the aid which he seeks, and we are unable to discover any equity in the claim that should induce us to favor it. The judgment appealed from must therefore be reversed.
It was suggested by the counsel for the plaintiff, that in the event of the reversal of the judgment, the cause must necessarily go back for a new trial, but, upon examining the provisions of the code, we are satisfied that no such necessity exists. This suit, it is true, was commenced before the adoption of the code, but it is by the provisions of the code that all proceedings upon an appeal are regulated, and under it we have exactly the same powers in reviewing upon an appeal, the decisions of a *538 single judge, that belong to the court of appeals in reviewing our own. We are empowered, not only to reverse or affirm, but to modify the judgment which is the subject of appeal.
The court of appeals has determined that the term “ modify” confers the same jurisdiction that was formerly possessed and exercised by the court of errors, and therefore includes the power, not only of altering partially the judgment which is appealed from, but of substituting in its place the exact judgment which the inferior court ought to have rendered. Considering the importance of this question of practice, and the material influence of its determination upon the future proceedings of the court, we felt it our duty to submit it to the consideration of all the judges, and it is their unanimous opinion, not only that we possess the jurisdiction that has been stated, but that, looking to the interest of suitors, its exercise in cases like the present is plainly and highly expedient. There is no conflict of witnesses in this case, nor any reasonable doubt as to the import of the evidence that has been given; nor has it been suggested that this import can be varied by any explanatory or counteracting proof on the part of the plaintiff. We can perceive no reason, therefore, for subjecting the parties to further expense and delay, by sending them to a trial, which, so far as this court is concerned, we know must result in the same judgment that we are now ready to pronounce.
Our decision therefore is, that the same judgment must now be entered, that ought to have been rendered at the special term; that is, a judgment for defendant with costs.