By the Court. Hoffman, J.
The most important piece of testimony in the case is a letter of the defendant to the plaintiffs, which is as follows:
“ Hew York, 17th September, 1852.
“.Gentlemen,—By order from Captain Adams, Messrs. Maxwell, Wright, and Company have in account credited the undersigned with some money arising from the sale of the Venus, which would have been remitted ere this had I not been otherwise instructed; but now, as Captain Adams has arrived, the amount shall be held subject to your joint order.. I believe the amount to be about 2,4941| 000, but will this evening refer to my account current. Captain Adams is to furnish me with his. individual account, and then the balance will be held as above stated.
“Yours respectfully,
“ John Graham.”
We ai;e of opinion that this recognises an obligation to account- to the plaintiffs, either for the whole amount, or such amount as might remain after an adjustment with Adams. The plaintiffs resided at Gloucester, Massachusetts, and the words, “ which would have been remitted ere this,” can only mean remitted to them. Therefore, as Adams had arrived, and was to furnish an account, the responsibility to-’the plaintiffs for the whole amount, or what should remain when that account was made up, was plainly admitted.
It was the defendant’s duty, also, to have promptly apprised the plaintiffs whether Adams’s account did reduce the amount allowed to be on hand.
The judge was not bound to submit the interpretation of this letter as a question of fact to the jury. Its construction is purely a question of law, arid we have no doubt of the correctness of that which we have given.
Hence, without resorting to Adams’s testimony at all, we consider that the plaintiffs’ case has been made out.
But his testimony, if credible, is decisive. We are of opinion that his credibility was sufficiently left to the judgment of the jury, in the charge of the chief justice.
*451 ■ An objection is taken to the ruling of the judge, that he excluded testimony as to subsequent declarations of Captain Adams, that he had testified falsely upon his examination; that he had given it under threats from the plaintiffs. The witness had been examined de bene esse before the trial, and at the time of the trial was absent from the country.
It cannot be denied, that the general rule of evidence prohibits the admission of any declarations of a witness, inconsistent with his sworn testimony, unless he has an opportunity of meeting and explaining them. The Queen’s case, and the other authorities collected in 1 Grreenleaf on Evidence, § 262, establish and explain this rule.
We do not think that the circumstance of the deposition having been taken de bene esse, makes a difference. The de-' fendant allowed the deposition to be réad. Had he applied to the court to put off the trial, on the ground of the discovery of: these declarations, and the absence of the witness, it may be that a postponement would have been permitted. But he may not suffer the cause to proceed, speculating upon his chances of success, and at the close of the trial proffer evidence of this nature.
The case of The People v. Moor, 15 Wend. 421, has been cited, as sanctioning an opposite doctrine. The public prosecutor, upon an indictment for murder, produced a witness by the name of Mansfield. The prisoner then produced a witness, Gook, who testified as to Mansfield’s declarations inconsistent with her evidence. Cook refused to testify on cross-examination, and was committed to jail. She then told a witness that her statements as to Mansfield’s declarations were false, and this evidence was admitted.
' So far as the rule referred to rests upon the protection due to a witness, it is manifest that when Cook was in jail for contumacy in refusing to testify, her right to be protected was justly disregarded. And as to the party producing her, a similar observation applies. He had produced one, who the committal proves was a dishonest witness; and it is further to be observed, that as she had not in fact been cross-examined, her examination in chief was not evidence at all, and ought, upon this ground alone, to have been wholly rejected. At any *452 rate, a case of so peculiar a character is not, in our-opinion, sufficient to. shake a long established and-important rule, of evidence.
There are some other exceptions upon which the counsel for the defendant laid much stress in his argument, to which I shall briefly advert, for the purpose of showing- the grounds, upon which they are overruled.
, The evidence given by Adams as to the ownership of the ■'vessel was properly received, and if he was believed by the jury, was sufficient to. prove the fact. He swore-that the plaintiffs were the sole owners, and that he had navigated the vessel in their employ. His possession, therefore, was the possession of those who, as owners, had employed him. The possession, however, of persons, claiming to be owners is, in all cases, presumptive evidence of their ownership; and it is. only when the title is rendered doubtful by contradictory proof, that the production. of the - register can be necessary. It is true, that in England, it appears, to be held that, those only whose names, appear upon the registry óf a vessel, can be recognised as its owners; and, consequently, when the: title is put at issue by the pleadings, it is only by the production of . the register that it can be established; but this seems to be owing to the peculiar and stringent provisions of one or more acts of-Parliament. There are no similar provisions in our acts of Congress, relative to the registry of vessels; and in this country, and particularly in this State, it has. long been settled that parole evidence,.to prove the ownership of a vessel, may always be received, and may even, in some cases, be received to prove the ownership of a party to the suit, notwithstanding the legal title is shown-by the register to be in other persons (Wendover v. Hogeboom, 7 John. 308; Leonard v. Huntington, 15 John. 298 ; Sharp v. United Ins. Co., 14 John. 201; Thorn v. Hicks, 7 Cow, 697; Hesketh v. Stevens, 7 Barb. 488; Bixby v. Whitney, 8 Pick. 86 ; Venal v. Burrill, 16 Pick. 140; U. States v, Wellings, 4 Cranch. 55; 3 Kent’s Com., 5th ed., pp. 120,121).
I add, that even had the proof of ownership upon the trial ' been insufficient, its defects would have been remedied by the ■ documents that were produced upon the .argument before us, ■ and which, we-agree .with the counsel for the plaintiffs, were, for that .purpose, admissible in evidence.
*453 The motion to strike out all those portions of the deposition of Adams which related to the agreement between him and the defendant, when the order upon Maxwell, Wright, and Co. was given, was very properly denied. The evidence was explanatory of the order, and not at all inconsistent with its terms, and it was in direct support of material allegations in the complaint, which were denied by the answer; and that the agreement was void, because it was not reduced to writing, cannot be pretended. The presiding judge would have committed a strange error had he, by granting the motion, excluded the evidence.
■ Whether the question to Adams, whether the order set forth in the complaint was a true copy of that which he had given, should have been overruled, it is needless to consider, since both the question and the answer were wholly unimportant. The fact that alone was necessary to be shown, was, that it was by virtue of an order from the captain of the vessel that the fund in question had been received by the defendant, and this was distinctly admitted in the answer. Mo proof as to the-order was, therefore, necessary to be given, and its, substance-being admitted, its exact words were immaterial..
We think that the decision of the judge, that the letters written by the defendant to Adams, some months after the deposition of the latter had been taken, were competent evidence, was, under the circumstances, entirely correct. The truth of the statement made by Adams was denied. He was charged with wilful and deliberate falsehood. Hence, that it was competent to show that the truth of his deposition had been admitted by the defendant himself, it is-impossible to doubt. It was, however, for the purpose of justifying this inference that the letters were produced and read; and whether, had the defendant believed that the deposition of Adams was wilfully false, he would have written to him subsequently in terms of confidence and friendship, was a question very proper to be-submitted to the consideration of the jury..
The refusal of the judge, when, by the closing of his charge*, the case had been submitted to the jury, to permit the recall of a witness previously examined, was not a ground of exception. Whether he would allow the witness to- be then: exa-r *454 mined upon the questions that it was said had been inadvertently omitted, or examined at all, rested entirely in his discretion. His refusal,. we see no reason to doubt, was a proper exercise of his discretion; and it is certain, from the nature of the questions that were to have been put to the witness, that it could ,not have operated to the prejudice of the defendant.
One or two exceptions remain that, in our opinion, do not require a special notice. They are overruled as plainly frivolous.
. An objection was taken as to the valuation of a milrea, and especially of the exchange of ten per cent, allowed by the jury, the testimony of Ayres being considered as insufficient. This difficulty could now be remedied in a summary method, but in truth the pleadings remove it.
Tim complaint states that the defendant received, by virtue of the order, the sum of 2,4941| 344 milreas, of the value ' of $1,403.07. The defendant, in his answer, admits, that in or about the month of April, 1851, he received from Maxwell, Wright, and Company, 2,496 milreas and 344 reas, and does not deny the value in dollars. By the contract, he was to deliver this sum to Mrs. Adams, in Massachusetts, deducting his own advance. The value stated in the complaint, is precisely the value of the milreas, as computed by Ayres ; but the jury have valued them at $1,397.07, exchange being taken at ten per cent. The verdict, therefore, needs no alteration as to the principal sum.
But we are of opinion that the allowance of interest is incorrectly made. We find no evidence or admission of a liability to the plaintiffs until the letter of the 17th of September, 1852. The original engagement was to pay the amount to Mrs. Adams, Gloucester.
The correct statement will be to allow interest on the 640 milreas, $364, from the 28th of March, 1850, the date of the advance, to the 1st of April, 1851; to deduct the aggregate from $1403.07, as of that day, and to compute interest' tin the balance to the day of the judgment. If the plaintiffs consent to this reduction, judgment may be entered for them for such amount, but without costs of the appeal; otherwise a new trial must be ordered.
*455 The plaintiffs consenting to the reduction, judgment was rendered in their favor upon the verdict so reduced.