McIntyre *v.* Humphreys and others.

The doctrine that a deed absolute on its face may be converted into a mortgage by parol testimony, is unquestioned, where the acts or declarations are cotemporaneous with the instrument. Subsequent statements should be more scrupulously admitted.

*Mr. Ellingwood,* for complainants.

June 3d.
July 1st.

*Mr. Chas. C. King,* for the infants.

*Mr. William Kent,* for the other defendants.

The Assistant Vice-Chancellor :—The bill alleges that the complainant, Peter McIntyre, being indebted, in

---

CASES IN CHANCERY.

the year 1830, to Elijah Humphreys, for money loaned and advanced, assigned to him a bond and mortgage of Thomas B. Clark, for the sum of $950, dated 14th October, 1820, by way of security ; and for further security, conveyed to him, by four several deeds, dated the thirteenth day of January, 1830, certain lots of land in the city of New-York.

That prior to the execution of the deeds, the lots were set up at auction, at the request of Humphreys, who became the purchaser ; that the property was not sold absolutely, nor intended so to be, nor was any consideration paid therefor, but solely to secure the debt of the complainant McIntyre, to Humphreys ; that the deeds were so received by Humphreys, who has since their execution stated, that he held them as security only for payment of the debt to him, and would re-assign and re-convey the same upon being paid ; that he delivered wine and other securities to Humphreys, but kept no account of them, nor can he state the amount of his debt.

E. Humphreys died in the year 1835, leaving a widow, the defendant Maria, and the infant defendants, his heirs at law ; the former claiming a dower right in the premises, and the children the title as heirs at law. The administrators claim the bond and mortgage.

The bill alleges, that the amount of the complainant's debt is much less than the value of the property.

It prays an answer under oath, a full discovery of the various matters charged, and that the complainant may be let in to redeem the property conveyed and assigned, an injunction restraining any sale of the property, and general relief.

The infants, by their guardian, have filed their general answer.

The administrator, Richard M. Clark, says, that he has been informed that the complainant was indebted to Humphreys ; that since the death of Humphreys, he has been informed that McIntire was the owner of the bond and mortgage ; that they were put in suit and pending the foreclosure, the complainant, for a sufficient and valid consideration, assigned the same to Humphreys.

He admits the execution of the deeds ; but as to the objects of those deeds, or of the assignment of the bond and mortgage, he is wholly ignorant; and indeed as to all the material allegations of the bill, he avers his ignorance, and leaves the complainant to his proof.

He avers that the land at the time of the conveyance was of very small value, compared with its present value ; and that he has been informed, since the commencement of the suit, that the sale at auction was *bona fide* and absolute ; that Humphreys at all times claimed to be the owner, and that the complainant admitted it.

The defendant then states certain transactions as to a bill of sale of furniture and other articles, made by the complainant to Humphreys after the conveyance of the lots in question. He avers, however, that such articles were removed by the complainant to Greenwich-street, and there used. He denies that Humphreys spoke of the lots as held for his security only. On the contrary he informed defendant that he was the owner, and acted as such absolute owner, subject to the right of dower of the wife of complainant.

The defendant then sets forth the accounts between Humphreys and the complainant as far as he can gather them from the books. He states a conveyance of certain land in the town of Warwarsink, Ulster county, of the same date as the conveyances of the property in New-York. He states that Humphreys kept an account with the property after his acquisition, a copy of which is annexed, marked No. 4.

The answer of Maria Humphreys, the widow, is substantially the same as that of Clark.

I may dismiss the point of fraud in the conveyances with the observation, that there is not evidence of a single debt being due, except what is furnished by the exhibit, No. 1; which also proves that the debts were paid by Humphreys.

The case has then two branches. 1st. With respect to the real estate, and bond and mortgage conveyed and as-

1839.

McIntyre
*v.*
Humphreys
and others.

signed by the deeds of January, 1830; and 2dly, as to the subsequent transactions between the parties.

It appears from the accounts annexed to the answer, drawn from the books of Humphreys, that the sum actually due on the 13th of January, 1830, was but $16 38. On the 8th of February, he pays a note of Humphreys of $1,000, which may be assumed as outstanding on the 13th of January. On the first of March ensuing, he endorses the note of McIntyre, for $1,800, which he pays on the 4th September; and in May, he becomes security for the rent of the house in Greenwich-street; on which account he is always in advance to the close of the account in April, 1833, when a balance of $1,470 15 is stated to have been due.

Humphreys also opens an account headed, " Dr. Purchase and Property, P. McIntyre," in which are charges for taxes, assessments, &c., applicable to the lots in question.

I consider all these accounts as made evidence against the complainant by the very special interrogatories and requisitions of the bill.

The considerations expressed in the deeds are respectively $20, $200, $10 and $30; being the amount of the bids at the public sale of $10 a lot. The value of the property in New-York, at the time of the conveyances, was at least five thousand dollars.

Humphreys, the grantee, entered into possession of the premises, paid taxes, assessments, &c.

It is too late to dispute the doctrine that a deed absolute in its terms may be converted into a mortgage by parol testimony, where that testimony relates to cotemporaneous acts or declarations. The restriction of the rule adopted in some cases, that it must be shown that a defeazance was not made, through accident, fraud or mistake, does not prevail under the decisions in our state. (*Strong* v. *Stewart*, 4 *Johns. C. R.* 167. *Van Beuren* v. *Olmsted*, 5 *Paige*, 10. *Roach* v. *Cozine*, 9 *Wendell*, 227.) Whether subsequent declarations will avail, may depend upon the period when they were made, and corroborating or in-

consistent circumstances. In *Marks* v. *Pell*, 1 *Johns. C.* *R.* 596, declarations made many years after the deed, and after possession taken under it, were held insufficient. In *Van Beuren* v. *Olmsted*, (5 *Paige*, 10,) I gather from the statement that the admissions, on which principally the case was decided, were subsequent to the conveyance.

What is the testimony here as to cotemporaneous acts of the parties?

The testimony of Dieterich fully establishes, that previous to the sale, at the sale, and subsequently, Humphreys declared that McIntyre owed him a sum of money, he thinks about $1,500; that he purchased the property for McIntyre, and in case he would refund the money he owed, it should revert back to him. He has heard Humphreys say that he held the property as security. His evidence goes to prove subsequent declarations to the same effect.

The testimony of Mr. Woodhull, if not equally positive, goes far to confirm the statements of Dieterich. Especially, he says, that Humphreys, in 1830 and 1831, or thereabouts, did advance money for McIntyre, and incur liabilities, as he understood, both from Humphreys and McIntyre, and that he, Humphreys, either held or obtained the property as security for so doing; and again he says, that as to the lots and the furniture, his conversations with Humphreys were principally before the conveyance.

The conclusion is inevitable, that this was intended as a mortgage for an existing debt or liabilities; and is so established by proof of acknowledgments made at the time, as well as afterwards.

Although McIntyre was, in strictness, indebted but $16, yet Humphreys was responsible for a note of $1,000 due 25 days afterwards; and I see nothing forced in the conclusion, that when he spoke before the sale of the debt to him, he included this liability.

It follows that a redemption must be allowed.

2d. The next question is, what other claims must be paid. The account headed, "Purchase, &c., P. McIntyre,"

is one of rents and profits and disbursements. That of course must be stated.

Another account is of Humphreys' advances for McIntyre, as security for the rent of the house in Greenwich-street; and the last is the general account, in which are charged the items of $16 83, and the $1,000 note before noticed. The subsequent items amount to $3,028 96.

The case of *James* v. *Johnson*, (6 *Johns. Ch. Rep.* 429,) is decisive to show that the property may be held as security for these subsequent advances, as well as for the existing debt or responsibility. No right exists in any other person, to prevent the instrument from thus operating.

There must be a decree, declaring the rights of the complainant to redeem, upon payment of the various sums set forth in the accounts with interest, as well as any subsequent proper advances in and about the premises, after deducting the rents and profits received, and making all just allowances. There must be a reference to a master to take the accounts, the decree to be framed similarly to that in *Van Beuren* v. *Olmsted*, (5 *Paige's Rep.* 12.)

There may be an inquiry also as to the Warwarsink lands, if required.

I do not find that there was any offer to pay the amount due. Indeed, the complainant says he could not tell the amount, and I see no reason, especially considering the representative character of some of the defendants, and the infancy of others, to exempt the complainant from the usual burthen of paying the costs.