Carter *v.* Hamilton.

---

CARTER *vs.* HAMILTON and SCOTT.

The amount for which a note is made payable can not be varied by parol, except by showing want of consideration, fraud or mistake.

A party may, by oral or extrinsic evidence, prove a fact which in law would be a sufficient answer to a part or the whole of the plaintiff's claim, provided that fact was not known to the parties, or one of them, and was not a subject of negotiation between them, either before or cotemporaneously with, the making of the contract. But he can not, in order to vary, contradict, or explain such a contract, introduce oral and extrinsic evidence of any agreement by the parties, by parol, made either at the same time or before, affecting that contract.

Accordingly, where the defendant purchased at auction a quantity of wheat, growing, at \$9,75 per acre, represented to be 105 acres; and gave his note for the amount; *Held* that in an action upon the note the defendant could not be allowed to prove by parol that the agreement at the sale was that the land should be afterwards measured, and the price vary as the number of acres should vary from 105; and that on subsequent measurement it was found to contain but a fraction over 94 acres.

THIS was an action brought to recover the balance due on a promissory note, bearing date December 8, 1848, made by the defendants, payable to John Coe, executor of Luther Carter deceased, or bearer, for \$1033,88, with interest, upon which it was admitted the sum of \$940,04 had been paid; and \$155,94 was still claimed by the plaintiff, to whom the note had been assigned, as remaining due on the note.

In the answer the defendants set forth that the said Coe was executor of Luther Carter deceased; that at the date of the note the said executor caused certain personal property, belonging to the testator, to be sold at auction; that the defendant Hamilton purchased, among other things, a lot of wheat growing on the said Carter's farm, at $9,75 per acre, represented to be 105 acres; for which the said note was given; and that an agreement was made at the sale, that the wheat should be afterwards measured, and the price vary as the acres should vary from 105; that it was afterwards measured and found to contain but 94¾ acres, and the defendant therefore claimed a deduction from the amount of the note, of $99,93 by virtue of that agreement; and further, that the defendants had tendered $52 damages and $8 costs, soon after the commencement of the action, which it was not denied would be a sufficient tender, provided the defendants were entitled to a reduction of the note as claimed by them. It was proved that the wheat was sold by the auctioneer, while standing a few rods from it; that he stated that there were supposed to be 105 acres, and it would be sold subject to measurement, by the acre. Coe, the executor, testified that he did not know, or did not recollect, how the wheat was proclaimed; but after the sale he was informed that it was sold subject to measurement. After the sale, Hamilton the purchaser gave the note, with Scott as his surety. At the time of the sale, Coe supposed the wheat belonged to him as executor. He afterwards learned that it was the property of Mrs. Carter, the plaintiff, and on her paying him the balance of the note, over and above the price of the wheat at 105 acres, he transferred the note to her. She was ignorant of the terms stated by the auctioneer until after the sale had been completed.

The report of the referee was for the plaintiff, for the whole amount of the note, and from the judgment entered upon that report the defendants appealed.

*A. Dann,* for the appellant.

*Wm. H. Kelsey,* for the respondent.

Carter *v.* Hamilton.

*By the Court,* TAYLOR, J. The principles of law, as applicable to cases bearing a resemblance to this, are well settled; and the reported decisions are very numerous. The only difficulty arises from the facts as governed by one principle of law, running into those applicable to another, with such slight shades of difference as sometimes to raise a doubt where the dividing line is found.

No principle can be better settled upon authority than this, that parol or extrinsic evidence, namely, is not, in general, receivable to contradict, vary or explain a written instrument. It would be inconvenient, say our old authorities, that matters in writing, made by advice, and on consideration, and which finally import the certain truth of the agreement of the parties, should be controlled by averment of the parties, to be proved by the uncertain testimony of slippery memory. (*5 Coke,* 26 *a.*)

Although this rule was introduced and established when the practice prevailed, universally, of affixing the seal of the party to the written instrument, it has been applied, generally, to simple contracts in writing, to the same extent and with the same exceptions as to contracts under seal; and the reason is equally applicable to both, namely, that the solemn documentary contract is designed to be the repository and evidence of the *final* intentions of the parties: and in nearly every case which involves this question, it is affirmed that all oral negotiations or stipulations between the parties, which preceded or accompanied the execution of the instrument, are to be regarded as merged in it.

But there are classes of cases where the rejection of oral proof would be extremely unjust: as for instance, where there is ambiguity, either patent or latent; fraud or covin; and sometimes a particular usage to show the intent of the parties. And it has often been decided that the amount for which a note is made payable can not be varied by parol, except by showing want of consideration, fraud or mistake. (*Cowen & Hill's Notes,* 976.)

In the present case there was neither fraud nor mistake: neither the executor nor the auctioneer made any affirmation or representation of which fraud could be predicated; nor was

there any mistake in giving the note; or such a mistake as would authorize an interference of the court to correct it, on that ground.

The testimony either showed a failure of consideration, and for that purpose was admissible and proper, and should have secured a report in the defendant's favor, or it went to vary a written contract, and therefore was inadmissible.

The rule above referred to is directed against the admission of any other evidence of the language employed by the parties, in making the contract, than that which is furnished by the contract itself. No other words are to be added to it, nor substituted in its stead, and the duty of the court is, in all such cases, to ascertain, not what the parties may have secretly intended, as contradistinguished from what the words actually express; but what is the meaning of the words used in the writing. (4 *B. & Ad.* 771. 5 *Id.* 122 *to* 129. 2 *Chit. R.* 275. *Greenl. Ev.* 277.)

In this case the agreement in writing was that for value received the defendant promised to pay a certain sum of money. The defendant contends that the meaning of this promise was that he would pay that sum, provided the number of acres should equal 105. This was probably the meaning of the parties in their previous conversations—but no such proviso can be extracted from the written contract. The distinctions in such cases are sometimes subtle, and necessarily somewhat difficult of explanation: extrinsic parol testimony is certainly admitted, to prove a mistake, and this does vary the written contract: so too in several other contingencies.

I apprehend a simple rule will elucidate the principle in several of these cases. The party may, by oral or extrinsic evidence, prove a fact, which fact in law would be a sufficient answer to a part or the whole of the plaintiff's claim, provided that fact was not known to the parties or one of them, and was not a subject of negotiation between them either before or cotemporaneously with the making of the contract; but he can not, in order to vary, contradict or explain such a contract, introduce oral and extrinsic evidence of any agreement by the parties, by

A case somewhat analogous to this, is found in 2 *W. Black.* 1249, which was an action on a lease, providing for the payment of £26 per annum.    On the trial the plaintiff offered to show, by parol evidence, that besides the £26, the defendant had agreed to pay £2 12s. 6d. a year, being the ground rent of the premises. The judge thought such evidence inadmissible, and nonsuited the plaintiff.    A new trial was denied, and Blackstone, J. said, Here is a positive agreement that the tenant shall pay £26.    Shall we admit proof that this means £28 12s. 6d. ?    (*See also Coke* v. *Guy*, 2 *B. & P.* 569 ; 1 *Day*, 23.)   ·

The case cited by the defendants' counsel from 3 *Hill*, 171, was for damages by way of *recoupment*.    In that case there was no dispute about the written contract.    The note was given for a quantity of wood.    The testimony showed a collateral engagement, relating to a distinct matter, to wit, an agreement in the nature of a warranty against subsequent loss by fire, resulting from the plaintiff's own act, and which undertaking might as well have been made by another as by the plaintiff.    The court put the decision upon the ground that there was nothing. in the case to alter, modify or impeach the contract.

However hard this case may operate upon the defendant, I think it clearly falls within the rule, excluding such evidence ; and accordingly the report of the referee must be confirmed.

[MONROE GENERAL TERM, June 3, 1851.    *Selden, Johnson* and *Taylor,* Justices.]