Ratliff et al. v. Ellis.

## RATLIFF *et al.* v. ELLIS.

Parol evidence is not admissible to change an absolute deed into one of trust, unless there be fraud, accident, or mistake, alleged and proved.

An *express* trust can be created or declared by writing, *only*.

J. R. purchased the east half of lot seven, and the whole of lot eight, in block eight in Fairfield, in the county of Jefferson, on the 19th of May, 1839, for $205.83 ; on the 9th of September, 1840, he took the bond of the county for a conveyance, and on the 5th of October, 1842, paid the purchase money ; at a date which does not appear, he assigned the bond to E. ; on the 9th of September, 1842, R. made a deed conveying this property to E. for the express consideration of $500, and on the same day, E. conveyed to R. for the same consideration, certain lands in Jefferson county ; R. died in November, 1846, and E. in 1851. R. and E. were on terms of intimate friendship ; R. having become excessively addicted to the use of ardent spirits, and being conscious that this habit was leading him to ruin, and being fearful (so the bill alleges), that he should squander this property, and leave his family destitute, put the title in E. with the intent, and on the express promise on the part of E., that he would hold in trust for R. and his family. There being no direct proof of this arrangement, it was attempted to be shown by evidence of the following facts : that E. repeatedly, after the death of R., spoke of the property as belonging to Mrs. R. ; that he called it hers at various times, and under various circumstances ; that he spoke of owing her rent for a part of the premises ; that when he sold part of lot eight, he did it in consultation with her, and with her consent ; that the note given for a part of the purchase money, though taken in his name, was placed in her hands, and the money paid to her, without objection ; that at R.'s death, one P.

was appointed administrator, and when the property of R. was inventoried, these lots were included as R.'s, but with a note appended, stating that the title was in E.; that E. was present when this inventory was made, and the lots included in it, and *knew* it, but made no objection; that P. resigned his administration, and E. was appointed in his place; that E. in his account rendered, made a charge against the estate of $8.41, paid for the taxes of the years 1846 and 1847, and it was attempted to be shown that this sum was for the taxes on this property. In an action by the heirs of R. against the sole devisee of E., to recover the east one-third of lot eight, in block eight in the town of Fairfield, and the rents for the remainder of the lot, for several years, and for the purchase money for which the middle third was sold by respondent, and which she received; *Held*, That there was no legal evidence to establish an *express* trust, and that the complainants could not recover.

### Appeal from the Jefferson District Court.

THIS is a bill in chancery by the heirs of John Ratliff, deceased, against Mehitable Ellis, sole devisee of P. Ellis, deceased, to recover the east one-third of lot eight, in block eight in the town of Fairfield (according to the old plat), and the rents of the remainder of the lot for several years, and the purchase money for which the middle third was sold by respondent, and which was received by her.

The petition alleges that John Ratliff, the deceased, purchased the east half of lot seven, and the whole of lot eight, in block eight in Fairfield, in the county of Jefferson, on the 19th of May, 1839, for $205.83; that on the 9th of September, 1840, he took the bond of the county for a conveyance, and on the 5th of October, 1842, paid up the purchase money; that at a date which does not appear, he assigned the bond to P. Ellis; that on the 9th of September, 1842, Ratliff made a deed conveying this property to Ellis, for the expressed consideration of $500, and on the same day, Ellis conveyed to R., for the same consideration, certain lands in Jefferson county; and that R. died in November, 1846, and E. in 1851. These facts appeared clearly, as also, that the half of lot seven was sold in R.'s lifetime, and two-thirds of lot eight in the time intervening between the deaths of R. and E., leaving only the east one-third of lot eight, which is the subject of this suit. The claims and allegations

Ratliff et al. v. Ellis.

which give character and direction to the petition, are such as the following: That Ratliff and Ellis were on terms of intimate friendship, and that R., having become excessively addicted to the use of ardent spirits, and being conscious that this habit was leading him to ruin, and being fearful that he should squander this property, and leave his family destitute, put the title in Ellis, with the intent, and on the express promise on the part of the latter, that he would hold it in trust for R. and his family. There is no direct proof, however, of this original arrangement. But in order to make this appear, there is an abundance of parol evidence going to show that E. repeatedly and frequently, spoke of the property, as belonging to Mrs. Ratliff; that he called it hers at various times and under various circumstances (this being after the death of her husband); that he spoke of owing her rent for a part of the premises; that when he sold parts of lot eight, he did it in consultation with her, and with her concurrence; and that the note given for part of the purchase money, though taken in his name, was placed in her hands, and the money paid to her, without objection.

In order to take the case out of the statute of frauds, and to furnish something in the nature of a written declaration or admission of the trust, the following two circumstances are relied upon: At Ratliff's death, one Pitzer was appointed administrator, and when the property was inventoried, *these lots* were included in the inventory, as R.'s; but with a note appended, stating the title to be in Ellis. Ellis was present when this inventory was made, and the lots included in it, and he *knew* it, but made no objection. Again: Pitzer resigning his administration, Ellis was appointed in his place. In his account rendered, he makes a charge against the estate of $8.41, paid for the taxes of the years 1846 and 1847. This account is under his signature. Then, it is alleged, that there was no property upon which such tax could accrue, unless it were upon these lots; and that, taking the valuation of these, and the rate of the tax levied, the tax for those years would amount to just $7.41. Then, a poll tax of fifty cents was ordered for each of those

years, and it is alleged, that it was ordered to be levied upon all who paid a property tax, and that this order included women. At least, it is claimed, that the order was, in fact, extended to women. This poll tax, added to the above sum, would make the $8.41, the amount charged by Ellis. Decree for complainants as prayed for, and respondent appeals.

*Clinton & Knapp*, for the complainants.

*Slagle & Wilson*, for the respondent.

WOODWARD, J. (1)—This cause is presented to us in an overwhelming mass of papers, commendatory of the patience, industry, and faithfulness of the counsel, but of doubtful utility toward the result. If it were possible to make a *resulting* trust of the case, it would be easy of decision, for there is much testimony tending to support such a case, and to charge Ellis, were it not that Ratliff, by *his own assignment and deed*, *conveyed this property to Ellis*. Were it not for this, the payment of the purchase money by Ratliff, with the testimony, would probably make out a trust, so far as the title derived from the county is concerned. But this whole mass of testimony, does not help us to dispose of the deed from Ratliff. Here the statute of frauds, and the common law rule of evidence, in relation to changing or adding to written instruments by parol evidence, meets us. Parol evidence is not permitted to change an absolute deed into one of trust, unless there be fraud, accident, or mistake alleged, and to be proved. We may personally, be convinced by the testimony, that the grantee was to hold in trust, but the peremptory rule of the law, will not permit us to declare it so. That law has said, that such a trust can be created or declared by writing, *only*. And it is our duty to administer the *law* as it is, and not to indulge our feelings, nor follow our personal convictions alone.

(1) WRIGHT, C. J., having been of counsel, took no part in the consideration of this cause.

Ratliff et al. v. Ellis.

The counsel very rightly disclaim the idea of a *resulting trust*, and explicitly rely upon an *express* one. Where, then, is it expressed? It is not in the deed from Ratliff to Ellis. We are referred to the inventory, and to the charge for paying taxing in the administration account. The first is no writing of Ellis. It has not even his signature. It amounts to no more than the parol evidence. And as to the other items, shall a court take property from one person and give it to another, upon the strength of that charge in the account? How uncertain, how loose, how indefinite, is this evidence. It is not named in the papers on what property, even, the tax was levied. If it had been on these lots, the assessment roll would show it; and parties who have been so industrious in accumulating papers, would not have omitted this evidence. Many ways may be conceived, in which this tax may have been made up. It *may* have been levied on the outstanding debts due the estate, an amount of which is shown, which would have admitted this, and even more tax. But tax lists are not of so accurate a character, as to found a safe argument upon them. This item of evidence is too uncertain to act upon in a matter of importance, and requiring a fair degree of assurance. And this is the only item of evidence in writing, "signed by the party," which is contained in all the papers pertaining to this cause.

We cannot decree this property to be conveyed to the complainant, without overturning one of the great rules of the law, which constitutes the security of all property. If it operates unkindly in an occasional instance, we must remember that imprudence only will cause it so to work, and that the rule is a bulwark of safety to all. It is not uncommon for a court, to be compelled to act in accordance with this rule, against the fullest and clearest parol evidence. See the cases of *Harkins* v. *Edwards & Turner*, 1 Iowa, 426; *Clark* v. *Russel*, 1 Cond. Rep. 197; *Faw* v. *Marsteller*, Ib. 345, note; *Stackpole* v. *Arnold*, 11 Mass. 27; *Mayhew* v. *Prince*, 11 Ib. 54; *Cook* v. *Eaton*, 16 Barb. 439; *Webb* v. *Rice*, 6 Hill, 219; *Arfridson* v. *Ladd*, 12 Mass. 173, 177.

However reluctant we may be, therefore, the court is under the necessity of reversing the decree of the District Court, and dismissing the complainant's bill.