JOHN BARRETT, Appellant, v. CHARLES T. CARTER, Respondent.

(GENERAL TERM, THIRD DEPARTMENT, JULY, 1870.)

The rule in equity, which admits parol evidence to show that a deed or instrument absolute on its face, was intended as a mortgage, only permits evidence to show, that at the time of the execution and delivery thereof the parties designed it to be a mortgage.

A subsequent agreement is not admissible unless in writing and formally executed.

In an action to have the plaintiff's conveyance to the defendant's devisor declared a mortgage,—*Held*, that the plaintiff's testimony that he did not pay rent to said devisor was properly excluded, under § 399 of the Code.

APPEAL from a judgment entered on a referee's report in favor of the defendants.

The action was brought to have a certain bill of sale, executed by the plaintiff to William Carter, deceased, and a lease in perpetuity, executed by Ebenezer Wiswall, to said Carter, in his lifetime, declared a mortgage, and to obtain a conveyance from the defendant to the plaintiff, of the house and lot covered by said lease and bill of sale, on the payment by the plaintiff of such sum as should be found due the estate of Carter on an accounting.

It appeared upon the trial that the plaintiff went into possession of a lot in Cohoes under an unwritten contract, with one Wiswall, to pay twenty-eight dollars rent or $400 principal. The plaintiff expended $800 in building a house on the premises, and resided in the house until July 20, 1863, never having paid Wiswall any rent or consideration money. On the last mentioned day, the plaintiff being indebted to various parties, in consideration of $470, sold and transferred his interest in the dwelling-house to William F. Carter, deceased, and at the same time assigned his interest in the contract

with Wiswall to said Carter. On the same day Carter exe-
cuted an instrument to the plaintiff, by which he agreed to
pay all taxes, interest, back rents outstanding, and certain
debts named in the agreement.

On the 21st of July, 1863, the deceased paid Wiswall for
the use of the premises during the period which the plaintiff
had occupied them, and received back a lease in perpetuity,
reserving an annual ground rent of twenty-eight dollars, which
had been regularly paid by the deceased during his life, and by
the defendant, Charles T. Carter, his devisee, since his death.

The deceased, after acquiring title, leased a portion of the
building not occupied by the plaintiff, and at his own expense,
made valuable and permanent improvements, with plaintiff's
knowledge.

There was evidence to show that at the time of the trial, in
1868, the property was worth $2,000, and other evidence upon .
the trial, which is referred to in the opinion.

Carter died on the 1st of August, 1866, leaving a will
which was duly proved, and which devised the property to
Charles T. Carter, the defendant, and appointed him executor.

The referee found, among other things, that William F.
Carter never loaned the plaintiff any money, and did not
accept the transfer of the dwelling-house, or the conveyance
of the lot to himself as security for money loaned, or for any
indebtedness, or promise, or agree to reconvey the premises,
or any part thereof, to the plaintiff, on any terms or condi-
tions. And as conclusions of law,

1st. That at the time of his death William F. Carter was
the legal owner of the house and lot mentioned and described
in the complaint, and held the same in fee, subject only to
the payment of a yearly ground rent reserved in the convey-
ance thereof from Wiswall to him.

2d. That the said plaintiff has no title or lawful claim,
either legal or equitable, to the said premises, or any part
thereof.

3d. That the defendant, Charles T. Carter, is the lawful
owner of said premises, the same having been devised to him

in and by the said last will and testament of William F. Carter, deceased.

4th. That the defendants are entitled to judgment against the plaintiff in this action dismissing his complaint, with costs to be adjusted, and ordered judgment accordingly. The plaintiff duly excepted to the findings of fact and conclusions of law.

Judgment was entered upon the referee's report, and the plaintiff appealed to this court.

*E. F. Bullard,* for the appellant.

*R. A. Parmenter,* for the respondents.

Present—MILLER, P. J., POTTER and PARKER, JJ.

By the Court—MILLER, P. J. It is well settled that in a court of equity it may be shown by parol evidence that a deed or instrument absolute on its face, was at the time of its execution intended by the parties to it as a mortgage. (*Hodges* v. *Tenn. Marine Fire Ins. Co.,* 4 Seld., 416; *Despart* v. *Walbridge,* 15 N. Y., 374; *Sturtevant* v. *Sturtevant,* 20 N. Y., 39; *Van Deusen* v. *Worrell,* 3 Keyes, 311; *Burney* v. *Wellman,* 42 Barb., 390; Will Eq. Jur., 429.) This rule, however, only prevails to the extent of showing that at the time of the execution and delivery of a deed or assignment absolute upon its face, the parties actually designed that it should be a mortgage or a collateral security. A subsequent agreement to that effect is not enough, unless it be in writing and formally executed. The distinction between the two cases is clearly manifest, and was recognized in *Sturtevant* v. *Sturtevant* (20 N. Y. R., 40), when it was held, that the grantor in an absolute conveyance of land not alleging fraud or mistake cannot prove by parol that the grant was in trust for himself. The court say: "There is in this case some evidence tending to show that the defendant was apparently willing to give up the land at one time on being paid

what the plaintiff then owed him; in other words, that he was willing to recognize and carry out the trust. But there is nothing to show that the deed was intended *at its execution* as a mortgage." The soundness of this distinction is manifest in applying it to the present case. The evidence shows that the deceased held the legal title to the premises in question at the time of his death in August, 1866, which he acquired of the plaintiff in the month of July, 1863. About this time the deceased had obtained a lease of the premises from the owner, it having previously been held by the plaintiff under a verbal agreement; he had also executed a writing to the plaintiff by which he agreed to assume and pay certain debts, demands and taxes then existing, and the back rents of said lot. He also afterward, and up to the time of his decease, received a portion of the rents, and made some improvements on the property, and devised it by his last will and testament. There is no evidence that the plaintiff ever paid any interest, made any repairs, paid any taxes or received any rents, or claimed title. In opposition to these strong facts, which show that the deceased was the absolute owner of the premises, is the alleged discrepancy between the price paid and the present value proved; the occupation of the plaintiff of a portion of the premises, and, what is *mainly* relied upon, conversations between the deceased and the plaintiff's wife, which it is claimed establish an admission that the property was held merely as security. The principal conversation relied upon was had during the last sickness of the plaintiff's wife, while the deceased was attending her as a physician, when it may have been the case that the deceased deemed it advisable not to contradict the patient in her debilitated and prostrated condition, and with these views told her not to worry herself about it until she got well. The other declaration was made two years previously, and was disclosed upon the re-direct examination of the witness, who testified to the conversation before referred to. It will be observed that neither of these declarations stated what the original arrangement was between the

parties, and if reliable, may very well have related to some other and subsequent contract for the purchase of the property of the deceased, besides the agreement contained in the written instruments executed between the parties. As already manifest, this would not bring the case within the rule, that parol evidence could be given to show that the transfer of the property was intended as a mortgage. But giving to such declarations all the force to which they are entitled under the most favorable circumstances, it may well be urged, that they merely tend to show a willingness to surrender the property at what it had actually cost, and not as establishing an agreement made at the *time the title* passed. In considering the weight to which such testimony is entitled, it must not be overlooked that declarations of this character are regarded as loose and uncertain testimony, and as the most dangerous species of evidence. A slight mistake or failure of recollection will pervert the entire meaning of a sentence, and change the effect of the words actually used. (*Garvin* v. *Acker*, 2 Barb., 25.) Such admissions, which do not show in any way what the agreement was, are not enough to overturn the original contract and papers accompanying it, which are *absolute upon their face.* (See *Cook* v. *Eaton*, 16 Barb., 442.) Although courts of equity scrutinize closely transactions between persons standing in the relation of physician and patient, yet there is, I think, no proof given or to be inferred of undue influence exercised over the plaintiff, which of itself or in connection with the circumstances proved, would authorize the interference of the court on that account. See *Nesbit* v. *Lockman* (34 N. Y., 167), and cases there cited.

It may also be observed that the facts adverted to were properly presented to the consideration of the referee ; and it is by no means clear that they are so entirely preponderating in favor of the plaintiff as to authorize the conclusion that the judgment of the referee was erroneous, and that his findings were directly against the evidence, as is claimed by the plaintiff's counsel.

Barrett v. Carter.

It is insisted that the referee erred in excluding the question put to the plaintiff, whether he had ever paid any rent to the deceased for occupying the house since the assignment. The testimony called for a personal transaction between the witness and the testator during the life of the latter, and, I think, was properly excluded. (Code, § 399.) Although it was negative testimony, yet it related to the subject-matter of the controversy, and to a fact in regard to the action of the testator, which cannot be considered otherwise than as a transaction between the parties. The object of the provision of the Code cited, was to prevent a party being called to prove a transaction where the other party was deceased; and if the plaintiff could testify to what was proposed, an important fact would be established without any means of contradiction. This would be a narrow construction of the enactment, and entirely defeat its purpose.

There was no error in the refusal of the referee to open the case to hear further evidence. After the parties to an action have rested, the admission or exclusion of further testimony rests in the discretion of the judge, or referee, before whom the trial is had. (*Stacy* v. *Graham*, 3 Duer, 453, aff'd, 14 N. Y., 497.) Unless this discretion has been abused, certainly the court should not interfere; and as no excuse is shown for not calling the witness prior to this time, there is no ground for holding that the referee erred. There was no error in the trial, and the judgment must be affirmed with costs.

Judgment affirmed.